[Cite as *State v. Gibson*, 2014-Ohio-433.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2013-P-0047** |
| - vs - | : | |
| DANELLE GIBSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas, Case No. 2010 CR 0858.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul A. Mancino, Jr.*, Mancino, Mancino & Mancino, 75 Public Square, Suite #1016, Cleveland, OH 44113-2098 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This is an appeal from the Portage County Court of Common Pleas. Appellant Danelle Gibson was found to be in violation of her probation and was sentenced to 30 days in jail, an additional year of probation, and was required to attend AA/NA meetings for a year. Gibson timely appealed. For the reasons set forth below, we reverse and remand.

{¶2} On February 28, 2011, Gibson pleaded guilty to two first degree misdemeanors and was sentenced to 360 days in jail and fined $1,000. The trial court suspended the sentence and $700 of the fine on the condition that Gibson would be placed on basic/general supervision of the Portage County Adult Probation Department for two years in addition to other conditions.

{¶3} On April 19, 2013, a motion to modify/revoke Gibson's probation was filed. In this motion, the probation department alleged that:

{¶4} "1. Probationer [Gibson] failed to conduct herself as a good citizen and in a moral manner at all times and refrain from offensive conduct in that on July 09, 2012, Probationer was arrested by Ravenna Police for Deception to Obtain a Dangerous Drug, Felony 4.

{¶5} "2. Probationer tested positive for Opiates on July 05, 2011."

{¶6} A probation revocation hearing was held where the trial court found Gibson violated her probation. The trial court did not give Gibson an opportunity to address the court and request leniency for her probation violation. However, Gibson did not request to address the court before sentencing. In determining that Gibson violated her probation, the trial court stated that:

{¶7} "It's clear to me, Ms. Gibson, that you have a problem. It's very clear. And if you don't face it and you don't get a handle on it, it's going to get out of control. It may be already out of control.

{¶8} "I'm going to find that you are convicted of this violation and I am going to sentence you to thirty days in Portage County Jail, that will begin now.

{¶9} "* * *

2

{¶10} "But you have a problem and it's clear. Within six days, fifty pills. And it looks like to me, I have heard at least five different doctor's names. You're doctor shopping. This is classic pill abuse. Classic."

{¶11} In the judgment entry that followed, the court found that "the Defendant has violated the terms of probation therefore a more restrictive sanction is necessary." There was no indication which of the two alleged violations in the motion to modify/revoke probation the trial court was referring to or the evidence relied upon to reach that conclusion.

{¶12} As her first assignment of error, Gibson alleges that:

{¶13} "Defendant was denied due process of law when the court sentenced her as a probation violator without specifying what the alleged probation violation was."

{¶14} In *Gagnon v. Scarpelli*, the U.S. Supreme Court identified the following six minimum due process requirements that apply to a revocation hearing for probation: "'(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses * * *; (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.'" *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972).

{¶15} However, the Ohio Supreme Court has indicated that oral statements, though not the preferred practice, can satisfy the written requirement that the factfinder

3

disclose the evidence relied on and reasons for revoking probation. *State v. Delaney*, 11 Ohio St.3d 231, 235 (1984).[1] When the trial court only gives an oral explanation of modifying or revoking probation, the trial court must "sufficiently inform[] the appellant of the reasons for which his probation was being revoked, while also providing an adequate record for review on appeal." *Id.* To satisfy the sufficiently informed requirement, due process requires a trial court judge to link the evidence of a probationer's wrongful conduct to a specific rule violation. *City of Columbus v. Beuthin*, 108 Ohio App. 3d 651, 655 (10th Dist. 1996) ("Due process requirements mandate that the trial court identify the probationary rule which appellant violated and the supporting evidence.").

{¶16} Here, we find the trial court did not sufficiently inform Gibson of the probation rules she violated and the supporting evidence for determining Gibson violated a probation rule. Because the trial court did not provide a written explanation of the reasons for the violation in the judgment entry, an oral explanation that meets the requirements of *Delaney* must be satisfied. In regard to the specific rule violated, the trial court stated "I'm going to find that you are convicted of *this* violation * * *." (Emphasis added). However, there were two specific violations alleged: the positive test for opiates and being arrested for obtaining a dangerous drug through deception. Furthermore, the finding that Gibson's conduct was "classic pill abuse" and that she was "doctor shopping" does not support the violation of an arrest by the Ravenna Police for deception to obtain a dangerous drug. The "classic pill abuse" and "doctor shopping" refers to conduct that occurred shortly before the revocation hearing in May

---

1. The disparity between the U.S. Supreme Court and the Ohio Supreme Court need not be addressed because, even considering the trial court's oral statements, Gibson prevails.

4

of 2013; but after the alleged probation violation that occurred in July of 2012. Moreover, it is indisputable that the facts do not support a finding of a positive opiates test. Therefore, the trial court's statement of facts does not support a finding that Gibson committed either of the claimed violations.

**{¶17}** Accordingly, we find this assignment of error to be well-taken.

**{¶18}** As her second assignment of error, Gibson alleges that:

**{¶19}** "Defendant was denied due process of law where defendant was sentenced to jail for allegedly testing positive for an opiate."

**{¶20}** Within this assignment of error, Gibson makes three arguments. First, that the positive test was against the sufficiency of the evidence; second, that there was an unreasonable delay in bringing the claim; and third, that this court should extend the statutory protections afforded to felony-defendants to Gibson who pled guilty to misdemeanors. In light of our ruling on the first assignment of error, addressing this assignment of error is premature and is therefore without merit.

**{¶21}** As her third assignment of error, Gibson alleges that:

**{¶22}** "Defendant was denied due process of law when the court apparently revoked probation based upon a condition not specified by the court."

**{¶23}** Here, Gibson alleges that she was found to be in violation of a rule that was not a requirement of her probation: namely, that she be required to perform random drug tests. Because we do not know whether Gibson was found to have violated her probation for a positive opiates test, this assignment of error is premature and therefore to that extent without merit

**{¶24}** As her fourth assignment of error, Gibson alleges that:

{¶25} "Defendant was denied due process of law when the court allegedly found defendant to be a probation violator without any evidence."

{¶26} Gibson argues that evidence of her arrest is insufficient to support a probation violation, unless evidence of the underlying conduct is also presented to the trial court. Several district courts have held that finding a violation for a mere arrest without evidence of the underlying conduct is an abuse of discretion. *See City of Toledo v. Nova*, 6th Dist. Lucas No. L-12-1229, 2013-Ohio-1094 ¶7 (listing cases). However, without knowing whether Gibson was found to be in violation of probation for her arrest, and not for her positive opiates test, or other reasons, addressing the assignment is premature and therefore is without merit.

{¶27} As her fifth assignment of error, Gibson alleges that:

{¶28} "Defendant was denied due process of law when the court proceeded to sentence defendant to jail when it failed to reserve any jail time when it granted probation."

{¶29} Gibson argues that the Ohio Supreme Court's ruling in *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, which requires that sentencing judges imposing community control on felony-defendants specify the maximum amount of time a defendant can face for violating a rule of community control, should apply to misdemeanor-defendants. We find no reason to extend the community control sentencing requirements from *Brooks* to misdemeanor-defendants like Gibson.

{¶30} Given the textual basis of both Gibson's appeal and *Brooks*, it is useful to compare the texts of the relevant statutes together. R.C. 2929.19(B)(4), which outlines

part of the procedure for felony-defendants sentenced to community control, provides in relevant part that:

{¶31} "If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated * * * [the court] may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code."

{¶32} R.C. 2929.15(B), which outlines possible sanctions for community control violations for felony-defendants states that if a prison term is to be imposed, it "shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)(2) of section 2929.19 of the Revised Code."

{¶33} In contrast to R.C. 2929.19(B)(4) and 2929.15(B), in R.C. 2929.25(A)(3)(c), the statute that governs community control for misdemeanor-defendants, there is no language indicating the trial court at sentencing must select the maximum possible sentence that may be imposed for a community control violation. Instead, there is only a requirement that the trial court give notice that the court may "[i]mpose a definite jail term from the range of jail terms authorized for the offense under section 2929.24 of the Revised Code."

{¶34} Gibson argues that the phrase "a definite jail term" of R.C. 2929.25(A)(3) should be interpreted the same way the Ohio Supreme Court interpreted "the specific

jail term" in R.C. 2929.19 to require judges to inform defendants at sentencing of the maximum jail term that can be imposed for a community control violation. We disagree. Unlike in the felony community control statutes, the only requirement for misdemeanor community control is that the judge gives notice that the defendant may be subject to a jail term for a community violation. Given that all community control statutes require notice that a jail term may be imposed for a community control violation, the additional requirement that a court, "shall indicate the specific prison term that may be imposed as a sanction for the violation" is the source of the need to indicate the maximum possible prison term for a community control violation for felony-defendants. Were we not to reach this conclusion, we would risk violating well-accepted rules of statutory construction by reading part of 2929.19(B)(4) as superfluous. *See State ex rel. Myers v. Board of Education*, 95 Ohio St. 367, 373 (1917) ("No part [of a statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.").

{¶35} Moreover, in determining that felony-defendants must be informed of the specific prison term that may be imposed for a community control violation, the Ohio Supreme Court emphasized the unique obligations of a sentencing judge toward felony-defendants. When the Ohio Supreme Court quoted the language from R.C. 2929.19(B)(4) (then 2929.19(B)(5)), they emphasized that the sentencing judge, when placing a defendant on community control, must notify the defendant that the court "'may impose a prison term on the offender and *shall indicate the specific prison term that may be imposed as a sanction for the violation*, as selected by the court from the

8

range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.'" *Brooks*, ¶6 (quoting R.C. 2929.19(B)(5)). Furthermore, when analyzing R.C. 2929.15(B), the statute that details the procedure for a community control violation for felons, the court again emphasized the statutory responsibility of the sentencing judge to inform the defendant of the specific prison term they may face for a community control violation. *Id.* ¶7. Therefore, in reaching its decision, the Ohio Supreme Court exclusively relied upon the clause as the source of the additional sentencing requirement for felony community control to determine whether the court complied with R.C. 2929.19(B)(4). *See generally Brooks*, ¶19-33.

{¶36} Finally, we note the concurrence of the Fourth District, in *State v. McDonald*, 4th Dist. Ross No. 04CA2806, 2005-Ohio-3503. Faced with a similar situation, the Fourth District ultimately concluded that "the misdemeanor statute, unlike the felony statutes, does not require the court to select a specific jail term and to notify the offender that the court will impose that specific sentence if the offender violates community control." *Id.* ¶13.

{¶37} The fifth assignment of error is without merit.

{¶38} As her sixth assignment of error, Gibson alleges that:

{¶39} "Defendant was denied due process of law when the court sentenced her to jail without affording defendant her right of allocution."

{¶40} In support of Gibson's claim that a right of allocution exists at a revocation hearing, Gibson points to Crim.R. 32(A) which provides a right of allocution "when determining the sentence to be imposed," as well as our ruling in *State v. Occhipinti*, 11th Dist. Lake No. 98-L-061, 1999 Ohio App. LEXIS 2194 (May 14, 1999). We find,

9

however that, as a general matter, there is no right of allocution at a probation revocation hearing.

**{¶41}** Crim.R. 32(A) provides in relevant part that:

**{¶42}** "At the time of imposing sentence, the court shall do all of the following: (1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

**{¶43}** "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into considering when considering the sentence to be imposed." *Defiance v. Cannon*, 70 Ohio App.3d 821, 828 (1990). Out of all of the district courts of appeals that have ruled on this matter, all have concluded that there is no right of allocution at a probation revocation hearing. *State v. Turjonis*, 7th Dist. Mahoning No. 11-MA-28, 2012-Ohio-4215, ¶6; State v. Krouskoupf, 5th Dist. Muskingum No. CT2005-0024, 2006-Ohio-783, ¶15; *State v. Henderson*, 8th Dist. Cuyahoga No. 42765, 1981 Ohio App. LEXIS 10890, at *12-13 (June 18, 1981), *but see State v. Colley*, 4th Dist. Scioto No. 06CA3095, 2007-Ohio-6478, ¶16, fn. 3 (assuming but not deciding that a right to allocution exists at a probation revocation hearing).

**{¶44}** We agree with the other district courts of appeals that have found there is no right of allocution at a probation revocation hearing. A sentence is imposed at sentencing, but when community control is modified or revoked no *new* sentence is imposed on the defendant; rather the defendant's probation is either modified or the defendant's sentence is reinstated.

10

**{¶45}** As for *Occhipinti*, the unique facts of that case underscore our ruling today. In *Occhipinti*, the defendant pleaded guilty to two counts of grand theft in a plea deal and was sentenced for two years for each count. *Occhipinti*, at *2. At sentencing, the trial court suspended the sentence in favor of probation, but never stated whether the defendant would serve the sentences concurrently or consecutively. *Id.* When the defendant's probation was revoked, the trial court in the probation revocation hearing reinstated the defendant's sentence and determined that he would serve his sentences consecutively. *Id.* at *5. On appeal, we determined because the trial court in the probation revocation hearing was making a decision in place of the original sentencing judge, a right of allocation was necessary. *Id.* at *18 ("[S]ince the trial court revoked appellant's probation and modified his sentence, we believe that the trial court should have allowed appellant an opportunity to speak before imposing consecutive prison terms.").

**{¶46}** Here, however there is no modification of the original trial sentence; rather Gibson's probation was modified and her sentence was partially reinstated. Unlike *Occhipinti*, the trial court in this revocation hearing did not exercise any discretion in the place of the original sentencing judge. As such, the general rule that there is no right to allocation at a probation revocation hearing controls this case.

**{¶47}** The sixth assignment of error is found to be without merit.

**{¶48}** As her seventh assignment of error, Gibson alleges that:

**{¶49}** "Defendant was denied due process of law when the court in its judgment entry of sentence imposed additional conditions not orally pronounced at sentencing."

11

{¶50} In light of the disposition of the first assignment of error, this assignment of error is moot. App.R. 12(A)(1)(c).

{¶51} The judgment of the Portage County Court of Common Pleas is reversed. We remand to the trial court for further proceedings consistent with this opinion.

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion,

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶52} I concur with the majority's finding on the first assignment of error, and given that we are reversing this matter, I see no reason why the majority espoused opinions on the remainder of this case, as Gibson will be resentenced. However, unlike the majority, I would extend by implication and sound practice the findings in *State v. Brooks,* 103 Ohio St.3d 134, 2004-Ohio-4746, in criminal misdemeanor sentences where there is the possibility of incarceration, determined by the degree of the misdemeanor.

{¶53} I believe that wherever and whenever a defendant is eligible to be deprived of liberty he or she should receive all procedural and substantive due process consistent with the Ohio constitution, including the right of allocution, the right to know their sentence at the time of sentencing, and the right to know the consequences of violating probation.

_____

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part with a Concurring/Dissenting opinion.

{¶54} While I agree with the majority's disposition of appellant's fifth and sixth assignments of error, I disagree with its disposition of appellant's first assignment of error and, by implication, its conclusions that appellant's remaining assigned errors are either unripe or moot. I therefore respectfully dissent, in part, from the majority opinion.

{¶55} Regarding appellant's first assignment of error, the majority concludes appellant's due process rights were violated because the trial judge neither adequately informed her of the probation rules she violated nor sufficiently set forth the supporting evidence for the violation. A review of the totality of the hearing demonstrates appellant had clear notice of the basis of the court's conclusion as well as the evidentiary foundation for the court's determination.

{¶56} Appellant's probation officer testified the conditions for her probation required, inter alia, appellant to conduct herself as a good citizen and report for random drug screens. Although the former condition is rather vague, it is reasonable to conclude that it, at least, contemplates refraining from criminal activity; further, implicit in reporting for random drug screens is the expectation that the probationer, when reporting, would pass the test the probation officer administers. The motion to modify/revoke probation made the following allegations: (1) Appellant failed to conduct herself as a good citizen, in a moral manner at all times and refrain from offensive conduct; to wit: she was arrested on a felony-four drug charge on July 9, 2012; and (2) appellant tested positive for opiates on July 5, 2011.

13

**{¶57}** At the hearing, the state established, and appellant did not refute, that appellant was, indeed, arrested for a felony-four drug charge, and she tested positive for opiates. The evidence additionally established that she also tested positive for both opiates and/or "benzos" on several other occasions *and* failed to report for a drug screen on one occasion; these potential violations, however, were not alleged as bases for holding appellant in violation. The evidence further established that, between April 24, 2013 and April 30, 2013, appellant had acquired two separate prescriptions from two different physicians for oxycodone; in effect, over the course of these six days, appellant acquired 50 oxycodone pills.

**{¶58}** After hearing evidence, the trial court stated:

**{¶59}** "It's clear to me, Ms. Gibson, that you have a problem. It's very clear. And if you don't face it and you don't get a handle on it, it's going to get out of control. It may be already out of control.

**{¶60}** "I'm going to find that you are convicted of this violation and I am going to sentence you to thirty days in Portage County Jail, that will begin now."

**{¶61}** After extending appellant's probation for 12 months; the court ordered appellant to attend AA, NA, or a similar 12-step program. The court then continued:

**{¶62}** "But you have a problem, and it's clear. Within six days, fifty pills. And it looks like to me, I have heard at least five different doctor's names. You're doctor shopping. This is classic pill abuse. Classic."

**{¶63}** The majority concludes the trial court's statement regarding "this violation" failed to give appellant any notice of which particular charge the court premised its

14

conclusion. The majority's position is based upon an unnecessarily narrow reading of the phrase "this violation."

**{¶64}** Multiple Ohio courts have agreed with the proposition that merely being *charged* with a crime is insufficient to establish a violation of probation. *See e.g. Toledo v. Nova*, 6th Dist. Lucas No. L-12-1229, 2013-Ohio-1094; *State v. Wagner*, 179 Ohio App.3d 165, 2008-Ohio-5765, ¶42 (2d. Dist); *State v. Craig*, 130 Ohio App.3d 639, 642 (1st Dist.1998); *State v. Kidwell*, 10th Dist. Franklin No. 94APA06-883, 1995 Ohio App. LEXIS 564, *2; *State v. Moine*, 72 Ohio App.3d 584, 589 (9th Dist.1991). With this in mind, it is reasonable to infer that the court's use of the phase "this violation" refers to the collective allegations in the motion to modify/revoke, i.e., using the phrase to, for instance, refer to "these violation proceedings." This interpretation would eliminate the inference that the court intended to hold her in violation for one of the two individuated charges upon which the motion was premised.

**{¶65}** Viewed this way, the court's statement provided appellant with notice that she was in violation of her probation as a result of the felony charge *and* testing positive for opiates. And the subsequent observations regarding appellant's drug abuse problems and apparent "doctor shopping" provided sufficient supportive evidence to justify the court's ultimate conclusion. I would therefore overrule appellant's first assignment of error.

**{¶66}** Appellant's second, third, fourth, and seventh assignments of error each assert, in one form or another, that she was deprived of due process of law by the trial court's actions in the course of the underlying proceedings. Appellant did not raise any of these issues before the trial court, nor did counsel object on due process grounds to

15

either the state's means of establishing its proof or trial court's procedures in finding appellant in violation. When a constitutional issue, apparent at the time of a hearing, is not raised before the trial court, it will not be addressed in the first instance by the court of appeals. *See e.g. State v. Farmer*, 2d Dist. Montgomery No. 22852, 2009-Ohio-6013, ¶23, citing *State v. Awan*, 22 Ohio St.3d 120 (1986). The issues in appellant's second, third, fourth, and seventh assigned errors were apparent at the time of trial. Accordingly, by failing to make the challenges before the trial judge, appellant has forfeited her ability to raise them now on appeal. *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, generally. I would consequently overrule appellant's third, fourth, and fifth assignments of error.

{¶67} For the reasons above, I accordingly dissent, in part, from the majority's opinion.