[Cite as *State v. Payne*, 2015-Ohio-5073.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0007** |
| PAMELA M. PAYNE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2013 CR 674.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Anna Markovich*, 18975 Villaview Road, Suite 3, Cleveland, OH 44119 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Pamela M. Payne, appeals the December 30, 2014 judgment entry issued by the Ashtabula County Court of Common Pleas finding her in violation of the conditions of her community control and sentencing her to thirty-six months in prison. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On December 19, 2013, Payne was charged with one count of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, a felony of the

third degree, in violation of R.C. 2925.041(A) and one count of Complicity to Illegal Manufacture of Drugs, a felony of the first degree, in violation of R.C. 2923.03. On August 22, 2014, Payne entered into a plea agreement and pled guilty to Count One. Count Two was dismissed.

{¶3} Appellant was sentenced to two years of community control under intensive supervision of the Probation Department of the Ashtabula County Common Pleas Court and was required to complete the six-month NEOCAP program.

{¶4} Appellant entered NEOCAP on December 9, 2014, but was discharged from the program and returned to jail on December 15, 2014. According to the termination report, appellant's "disruptive, threatening, erratic, and unpredictable behavior makes it clear that she has no intentions on following her treatment plan or adhering to the structure and rules of [the] program." The letter noted that on December 10, 2014, appellant was instructed to get out of bed but responded with a disruptive outburst demanding she be evaluated by a psychiatrist; she threatened to kill herself if her demands were not met. This outburst disrupted the treatment facility and other residents from their treatment work.

{¶5} The letter continued outlining the efforts made to ensure appellant's needs were met. On December 14, 2014, appellant had another disruptive episode whereby she again made demands to be removed from the program and explained a list of ways that she would kill herself if such demands were not met. This episode continued and appellant was transported to a local hospital for a psychiatric evaluation. Hospital records indicated that appellant appeared to be malingering. They reflect that appellant at one point stated: "Can you guys just keep me here for a few days so I don't have to

go back there?" She was released by the hospital that same evening with a recommendation that NEOCAP continue appellant's suicide watch protocol. She was negatively terminated from the facility as of December 15, 2014.

{¶6} The trial court stated: "Under the circumstances, the court finds she has failed to comply with the requirements of community control and that the state has proved this by substantial credible evidence and, therefore, I find the defendant guilty of violating the probation in this case." Consequently, appellant was sentenced to a term of 36 months in prison.

{¶7} Appellant raises the following assignments of error:

> [1]. The trial court abused its discretion by revoking appellant's community control sanctions.

> [2.] The trial court abused [its] discretion and denied appellant's due process by overruling appellant's motion for a mental health evaluation.

> [3.] The trial court erred by imposing a thirty-six-month prison sentence as a penalty for appellant's violation of her community control sanctions.

> [4.] Appellant was denied due process of law when the trial court sentenced appellant for the violation of community control sanctions without, first, allowing her right of allocution.

{¶8} Appellant's first and second assigned error concern the revocation of her community control, and therefore, we address them under a consolidated analysis.

{¶9} Generally, the decision to revoke community control is evaluated under an abuse of discretion standard. *State v. Russell*, 11th Dist. Lake No. 2008-L-142, 2009-Ohio-3147, ¶6. In *Russell*, this court recognized:

> 'The privilege of probation [or community control] rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the

3

privilege.' * * * 'Because a revocation hearing is not a criminal trial, the State only has to introduce evidence showing that it was more probable than not that the person on probation or community control violated the terms or conditions of the same.' * * *

*Id.* at ¶7 (citations omitted).

{¶10} Crim.R. 32.3 provides the procedural framework that is to occur at a community control revocation hearing and provides, in pertinent part: "(A) Hearing. The court shall not impose a prison term for violation of the conditions of a community control sanction or revoke probation except after a hearing at which the defendant shall be present and apprised of the grounds on which action is proposed. The defendant may be admitted to bail pending hearing."

{¶11} "'Before a trial court imposes a prison term for a violation of the conditions of a community-control sanction, the court must hold a hearing at which the defendant is present and apprised of the grounds for the violation.'" *State v. Orr*, 11th Dist. Geauga No. 2008-G-2861, 2009-Ohio-5515, ¶22, quoting *State v. Alexander*, 1st Dist. Hamilton No. C-070021, 2007-Ohio-5457, ¶8.

> Generally the state is not required to show that a probation violation is willful. * * * ('[t]here is nothing in Crim.R. 32.3 * * * that mandates that the state must introduce evidence showing that the probation violation was willful')' * * * ('[t]here is no requirement that the state prove willfulness before the court can revoke a defendant's community control').

*State v. Conn*, 11th Dist. Portage No. 2010-P-0067, 2011-Ohio-5865, ¶18 (citations omitted).

{¶12} First, contrary to appellant's assertion, the state was not required to present evidence that appellant willfully violated the terms of her community control. And, further, the state was not required to prove by a preponderance of the evidence

4

that appellant violated the conditions of her community control sanction. Instead, the state must present evidence that it is more probable than not that appellant violated the terms of her community control. *Russell*, *supra*, ¶7.

{¶13} At the revocation hearing, the state presented the testimony of Mr. David Gugliemlo of the Ashtabula County Adult Probation Department who was assigned to supervise appellant's community control. Mr. Gugliemlo testified that he met with appellant at the Ashtabula County Jail to outline the conditions of her supervision; she understood the conditions and did not "act out" during his visit. At NEOCAP, however, appellant began to engage in disruptive behavior, including threats of suicide if her demands were not met. Appellant was sent to be evaluated at the hospital but was discharged to NEOCAP the same night because the hospital believed she was malingering; appellant asked her assessor at the hospital if she could be kept there for a few days so she would not have to return to NEOCAP. Appellant was diagnosed with depression and was placed on suicide watch, as it was believed that she was determined to be released from the program. Upon her release from NEOCAP and return to jail, Mr. Gugliemlo again evaluated her. He testified that she was again cooperative and "gave [him] no problems."

{¶14} Appellant also claims she was denied her due process rights at the community control revocation hearing. Specifically, appellant maintains the trial court erred by denying her motion for a mental health evaluation, and thus, she was not able to present mitigating evidence. Appellant cites *Morrissey v. Brewer*, 408 U.S. 471 (1972), for the proposition that several safeguards needed to be complied with in this matter. These rights have been extended to probation or community control revocation

5

hearings. *See State v. Heinbach*, 8th Dist. Cuyahoga No. 67821, 1995 Ohio App. LEXIS 3792, *4 (Aug. 31, 1995).

{¶15} Appellant's motion claimed that she violated community control because the state disrupted her course of mental health treatment. The record demonstrates the trial court was cognizant of appellant's mental health issues prior to revoking her community control; appellant plead guilty to an offense which carried a presumption of imprisonment, but the trial court sentenced appellant to community control sanction, including her placement in NEOCAP, upon the recommendations of counsel and appellant's desire for drug treatment. The NEOCAP discharge letter, admitted into evidence at the revocation hearing, was replete with instances where appellant was disruptive and not willing to engage in treatment. The trial court also heard testimony that appellant was not combative prior to or immediately after her discharge from NEOCAP. It was evident from the record that while appellant may have had mental health issues, she was combative and noncompliant with her treatment at NEOCAP and, therefore, unable to complete this term of her supervision, i.e., the attendance and successful completion of the NEOCAP Community Based Correction Facility Program. The denial of the motion for a mental examination under these circumstances does not undermine the process that one is due under the Constitution or the laws of Ohio.

{¶16} Appellant's first and second assignments of error are without merit.

{¶17} Under her third assignment of error, appellant presents two issues for our review. We first address appellant's argument the trial court failed to comply with the R.C. 2929.19(B)[4] notification requirements prior to imposing her 36-month sentence.

{¶18} R.C. 2929.19(B)(4) states:

6

If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offense pursuant to section 2929.14 of the Revised Code.

{¶19} In *State v. Brooks*, 103 Ohio St.3d 134, 2004-Ohio-4746, paragraph two of the syllabus, the Ohio Supreme Court held that pursuant to the language from R.C. 2929.19(B)(4) (then 2929.19(B)(5)), "a trial court sentencing an offender to a community control sanction must, at the time of the sentencing, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation."

{¶20} At the sentencing hearing, the trial court informed appellant that she would be placed on an initial period of intensive supervision for two years. The trial court then outlined the terms and conditions of the supervision and informed appellant that she would be required to "comply with all the standard terms and conditions of supervision [and] remain law abiding." The trial court proceeded to inform appellant that she would be "entitled to seven days jail time credit if there [was] a sentence imposed" and finally stated, "[a]nd if there is a sentence imposed on this particular situation, it is going to be a sentence of 36 months imprisonment." The sentence set forth by the trial court was "a prison term of 36 months" in the judgment entry of sentence.

7

{¶21} Appellant asserts the trial court erred by failing to elucidate that imprisonment would only result if she *violated* the terms of her supervision. In effect, she maintains the court failed to provide an exact statement that she could be sentenced to prison only if a violation occurred. We find appellant's construction of the trial court's explanation unreasonable.

{¶22} The trial court stated: "If there was a sentence imposed in this particular situation, it will be a sentence of 36 months." The trial court explained, and appellant was on notice, that she was being placed on intense supervision; by necessary implication, she was on notice she was not being sent directly to prison. The trial court made clear there were terms and conditions with which she must comply. Viewing the overall context of appellant's sentence, the trial court's statement indicates her intense supervision was conditional and not absolute, i.e., it would persist only insofar as appellant complied with those terms and conditions. The record reflects she was given adequate and appropriate notice of those terms and conditions, including the meeting with the representative from the adult probation department. Hence, the only reasonable conclusion that can be drawn from the court's express statement is that a prison sentence would be imposed only if appellant violated the conditions of her supervision. The court's failure to include the statement, "if you violate the conditions, a sentence will be imposed," is inconsequential as the surrounding circumstances of the advisement placed appellant on reasonable notice that a violation would result in the suspended prison sentence being imposed.

{¶23} Crim.R. 52(A) provides: "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The term "substantial rights"

8

has been interpreted to require that "'the error must have been *prejudicial*.'" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, ¶7, quoting *United States v. Olano*, 507 U.S. 725, 734 (1993) (emphasis sic). Accordingly, where the reviewing court determines that the alleged error "did not affect the defendant's substantial rights," i.e. was not prejudicial, "then the error is harmless and 'shall be discarded.'" *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶23, quoting Crim.R. 52(A).

**{¶24}** In this case, the trial court did not specifically advise appellant that imprisonment could be imposed if she violates conditions of her community control, violates any law, or leaves this state without permission as required by R.C. 2929.19(B)(4); as discussed above, however, the term "violation" was not necessary as it was implicit in the court's advisements. Furthermore, the court did state appellant was required to comply with conditions of community control and remain law abiding. Appellant was committed to NEOCAP in lieu of prison. And appellant was given notice that her failure to comply with NEOCAP's regulations, i.e., conditions of her community control, would result in her intense supervision being terminated. Furthermore, there was no possibility of her leaving the treatment center, let alone the state. In effect, appellant suffered no prejudice from the court's failure to provide notice that if she left the state, she would be in violation. Accordingly, her substantial rights were not affected. We conclude any error in the court's omission was harmless as a matter of law.

**{¶25}** Next, we address appellant's contention that her 36-month term of imprisonment does not comport with R.C. 2929.11 and R.C. 2929.12. We disagree.

9

{¶26} A felony sentence should be reasonably calculated "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). A court imposing a felony sentence is required to consider seriousness and recidivism factors found in R.C. 2929.12. However, it is well established that a trial court is "not required to make findings of fact under the seriousness and recidivism factors in R.C. 2929.12." *State v. ONeil*, 11th Dist. Portage No. 2010-P-0041, 2011-Ohio-2202, ¶34.

{¶27} Our review of the trial court record reveals the trial court considered the purposes and factors of felony sentencing in R.C. 2929.11 and R.C. 2929.12 before imposing appellant's sentence within the statutory guidelines. The trial court, both at sentencing and in the judgment of sentence, stated that it had considered the factors in R.C. 2929.11 and R.C. 2929.12.

{¶28} Appellant's third assignment of error is without merit.

{¶29} Under the fourth assignment of error, appellant argues she was not afforded her right to allocution, pursuant to Crim.R. 32, at the community control revocation hearing.

{¶30} The right of allocution is provided in Crim.R. 32(A)(1), which states that "[a]t the time of imposing sentence, the court shall * * * [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

**{¶31}** "The purpose of allocution is to allow the defendant an additional opportunity to state any further information which the judge may take into consideration when determining the sentence to be imposed." *Defiance v. Cannon*, 70 Ohio App.3d 821, 828 (3d Dist.1990).

**{¶32}** Appellant recognizes that in *State v. Gibson*, 11th Dist. Portage No. 2013-P-0047, 2014-Ohio-433, this court found "there is no right of allocution at a probation revocation hearing." *Id.* at ¶40. Appellant, however, argues that *Gibson* is not applicable to the case sub judice as there is a distinction between community control and probation. This argument is without merit. This court has noted that "probation is analogous to community control sanctions now in effect pursuant to * * * ('Senate Bill 2')." *State v. Davis*, 11th Dist. Lake No. 97-L-133, 1998 Ohio App. LEXIS 2933, *3 (June 26, 1998).

**{¶33}** Other appellate districts have addressed whether a trial court needs to afford the defendant the right of allocution before reinstating a sentence at a community control revocation hearing. As this court recognized in *Gibson*, "[a] sentence is imposed at sentencing, but when community control is modified or revoked no *new* sentence is imposed on the defendant; rather the defendant's probation is either modified or the defendant's sentence is reinstated." *Gibson*, s*upra*, at ¶44 (emphasis sic). *See also State v. Boykins*, 3d Dist. Marion No. 9-14-28, 2015-Ohio-1341, ¶32 ("there is no requirement for the right of allocution at a community-control-revocation hearing"); *State v. Krouskoupf*, 5th Dist. Muskingum No. CT2005-0024, 2006-Ohio-783, ¶15 ("The trial court was conducting a [community control] revocation hearing. There are no equivalent statutes or rules [as in Crim.R. 32(A)(1)] for such hearings."); *State v. Favors*,

11

7th Dist. Mahoning No. 08-MA-35, 2008-Ohio-6361, ¶19 ("[i]n a case such as this, where community control has been revoked and the trial court is simply reinstating an already determined sentence, there is no need for the defendant to be afforded the right to make a statement in mitigation of his sentence.). *But see State v. McAfee*, 1st Dist. Hamilton No. C-130567, 2014-Ohio-1639, ¶14. ("the trial court, in sentencing McAfee for his community-control violation, was required to address him personally and to afford him his statutory right to speak concerning matters relevant to his sentence").

{¶34} Here, as in *Gibson*, *Krouskoupf*, and *Favors*, appellant's community control had been revoked and the trial court imposed her already determined sentence; appellant had been informed at the sentencing hearing that she would serve a term of 36 months in prison if she did not comply with the terms of community control. At the revocation hearing, there was no modification of appellant's original sentence. Moreover, appellant was afforded her right to allocution at the time of her original sentence hearing. Under the circumstances, the trial court did not err in failing to give appellant the opportunity to speak at her community control revocation hearing.

{¶35} Appellant's fourth assignment of error is without merit.

{¶36} Based on the opinion of this court, the judgment of the Ashtabula County Court of Common Pleas is hereby affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

_____

12

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶37} I concur in the judgment of the court and its disposition of the assignments of error. I write separately to explain more fully my reasons for doing so.

{¶38} There is no dispute that Payne violated the condition of her community control sanctions that she "successfully complete the six month NEOCAP Program." Payne entered the program on December 9, 2015, and "was negatively terminated from the program on December 15, 2015, for engaging in behavior that undermined the intent and purpose of the program." Thus, the decision whether to terminate Payne's community control sanctions was wholly within the trial court's discretion. *State v. Conn*, 11th Dist. Portage No. 2010-P-0067, 2011-Ohio-5865, ¶ 13.

{¶39} Payne maintains that the violation was not willful, but, rather, she "was unable to complete NEOCAP because her mental health was untreated and because NEOCAP was unable to address her mental health needs." Although there was some evidence to support Payne's claims, the trial court acted within its discretion regardless of the validity of those claims.

{¶40} At the beginning of the hearing for violation of community control, the parties stipulated to Payne's discharge report from NEOCAP and that "the defendant was prescribed Lamictal from Signature Health but that NEOCAP was still waiting for Signature Health to refill that prescription so she did not have that medication while she was at NEOCAP."

{¶41} The only witness to testify at the hearing was Payne's probation officer, who began supervision of her on October 29, 2014. The officer described her as "cooperative, * * * no problems." She signed "a few releases during that time to

13

Signature Health and our general release." On cross-examination, the officer testified that he remembered "hearing" that Payne tried to kill herself at the jail: "At that time she was I believe assessed by the nurse and we did not address – she was awaiting a bed at NEOCAP. There was nothing further that I did. * * * It was my understanding that she was on her medications at that time." The officer also acknowledged that Payne was diagnosed bipolar.

{¶42} The NEOCAP report details Payne's six days in the program. Of note, she threatened to kill herself if her demands were not met. She was sent to the hospital which noted that she appeared to be malingering "as she expressed to the assessor during her mental health evaluation, 'Can you guys just keep me here for a few days so I don't have to go back there (NEOCAP).'" She was released from the hospital the same day with a diagnosis of depression and a recommendation that she remain on suicide watch "as she appeared to be determined to get out of the program * * *."

{¶43} "The purpose of the revocation process is to protect the public either by further attempted rehabilitation, or by revocation." *State v. Hutchison*, 63 Ohio App.3d 721, 725, 580 N.E.2d 34 (9th Dist.1989); *Morrissey v. Brewer*, 408 U.S. 471, 479-480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("if it is determined that the parolee did violate the conditions * * * the second question arise[s]: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?"). There is no requirement that the violation be willful. *State v. Solomon*, 5th Dist. Morrow No. 2012-CA-7, 2012-Ohio-4884, ¶ 21, citing *State v. Stockdale*, 11th Dist. Lake No. 96-L-172, 1997 Ohio App. LEXIS 4363, 5 (Sept. 26, 1997) ("[t]here is nothing in Crim.R. 32.3 * * * that mandates that the state must introduce evidence

14

showing that the probation violation was willful"); *State v. Estep*, 4th Dist. Gallia No. 03CA22, 2004-Ohio-1747, ¶ 14 ("[e]ven if we accept Estep's contention that he could not reasonably be expected to comply with this condition of his community control under the circumstances, we find no abuse of discretion in the trial court's decision [to terminate]").

{¶44} "Since the purpose of a probation revocation hearing is to determine whether the alternatives to incarceration which have been made available to the defendant should remain open for him, not to determine whether the defendant should be held responsible for the acts with which he is charged, a plea of insanity should not be permitted." *Hutchison* at 725.

{¶45} Thus, it is fairly well established that "[c]ommunity control may be revoked where, because of mental illness, a defendant is unable to comply with community control sanctions." *State v. Harian*, 8th Dist. Cuyahoga No. 97269, 2012-Ohio-2492, ¶ 28; *State v. Norris*, 5th Dist. Stark No. 2010CA0070, 2010-Ohio-6007, ¶ 22 ("[w]hile Appellant may not have willfully violated probation, there was no alternative to incarceration in order to protect the community"); *State v. Castellini*, 1st Dist. Hamilton Nos. C-110445 and C-110446, 2012-Ohio-1603, ¶ 14, quoting *State v. Qualls*, 50 Ohio App.3d 56, 60, 552 N.E.2d 957 (10th Dist.1988) ("insanity is not a complete defense in a probation revocation hearing but is a mitigating factor which a court should consider when the issue is timely raised").

{¶46} In the present case, the trial court duly considered Payne's mental health issues:

15

I think that the evidence before the court frankly does show exactly what's been suggested, that although the defendant probably does have some depression and other issues, that she's a manipulative person and is seeking to use this as a way of achieving her own result, in this case which includes avoiding attendance at NEOCAP. And so I think she's probably right. She's probably not a suitable candidate to attend NEOCAP and continue on community control.

* * * I don't know what else I can do other than terminate it.

{¶47} For the foregoing reasons, I concur in the judgment to affirm the decision of the lower court.